UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| WALTER PARKER and LINDA PARKER,<br><br>Plaintiffs,<br><br>- against -<br><br>SYNGENTA CROP PROTECTION LLC,<br>CHEVRON U.S.A., INC., and UNITED STATES<br>SUGAR CORPORATION,<br><br>Defendants. | Case No. _____<br><br>(Formerly Case No. 50-2021-CA-009421-<br>xxxx-MB in the Circuit Court of the<br>Fifteenth Judicial Circuit, Palm Beach<br>County, Florida) |

## NOTICE OF REMOVAL

Defendants Syngenta Crop Protection LLC ("Syngenta") and Chevron U.S.A. Inc. ("Chevron"), pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1367, hereby remove the above-captioned action from the Circuit Court of the Fifteenth Judicial Circuit Palm Beach County, Florida, case number 50-2021-CA-009421-xxxx-MB, to the United States District Court for the Southern District of Florida.  In support of removal, Syngenta and Chevron provide this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

## NATURE OF REMOVED ACTION

1.     On August 4, 2021, Plaintiffs filed this action, *Walter Parker and Linda Parker v. Syngenta Crop Protection LLC et al.*, in the Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida, case number 50-2021-CA-009421-xxxx-MB, alleging claims based upon exposure to products containing paraquat and Plaintiff Walter Parker's subsequent diagnosis with Parkinson's disease.

2.     The Complaint asserts three causes of action against Syngenta and Chevron, namely: (i) negligence; (ii) strict liability; and (iii) loss of consortium.  The Complaint also purports

to assert a claim against Defendant United States Sugar Corporation ("U.S. Sugar") under the tort exception to workers' compensation immunity.

3. The thrust of Plaintiffs' allegations is that by manufacturing, distributing, or selling products containing paraquat, Syngenta and Chevron exposed Walter Parker to an increased likelihood of developing Parkinson's disease, a disease that he was later diagnosed with.

4. This alleged conduct purportedly harmed Plaintiffs in the form of physical pain, mental anguish, loss of consortium, and medical expenses.

5. Over 250 similar cases—alleging Parkinson's disease based on past exposure to paraquat—have been filed against Syngenta and Chevron in federal courts around the country, and consolidated into a multidistrict litigation in the Southern District of Illinois. *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill. 2021). That MDL is still in its early stages, with new cases regularly being transferred to it. By filing this case in state court, Plaintiffs are seeking to avoid the MDL, which is designed to ensure the most efficient and orderly administration of a large number of cases presenting common issues of law and fact.

6. This case is subject to removal on the grounds of diversity jurisdiction, however, because there would be complete diversity of citizenship between Plaintiffs and Defendants but for the joinder of U.S. Sugar as a Defendant—but Plaintiffs have no hope of prevailing against U.S. Sugar given the immunity provided by Florida's workers' compensation regime. Defendant U.S. Sugar has therefore been fraudulently joined as a Defendant, and its citizenship is properly ignored for purposes of evaluating the Court's jurisdiction.

7. Even if Plaintiffs had viable claims against U.S. Sugar, the claims against U.S. Sugar (which was Plaintiff Walter Parker's *employer*) are not properly joined in the same action with the claims against Syngenta and Chevron (who allegedly manufactured and distributed the

products containing paraquat).  Defendant U.S. Sugar has therefore been fraudulently misjoined, and its citizenship is properly ignored for purposes of evaluating the Court's jurisdiction.

8.      At a minimum, the Court should sever the claims against U.S. Sugar from the claims against Syngenta and Chevron in order to preserve federal jurisdiction over the latter and defeat Plaintiffs' efforts to undermine federal jurisdiction over this case.

9.      Plaintiffs' claims are also removable because they arise under federal law. Plaintiffs' claims are premised on the breach of duties governed by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 *et seq*. ("FIFRA"), as regulated and enforced by the Environmental Protection Agency ("EPA").  *See, e.g.*, 7 U.S.C. § 136a (EPA must register any pesticide, including herbicides, before it is sold domestically after weighing the economic, social, and environmental benefits and costs of the product); *id*. § 136(q)(1)(F) (FIFRA empowers EPA to control warnings, directions, and packaging, and specifically mandates warnings for pesticides that are "adequate to protect health and the environment"); *id*. § 136j(a)(2)(G) (making it illegal to use any pesticide "in a manner inconsistent with its labeling"); 40 C.F.R. § 152.160 (paraquat is a "restricted use" pesticide and may only be applied by a certified "restricted use" applicator or someone acting under a certified applicator's "direct supervision"); *id*. §§ 171.103, 171.105 (pesticide applicators are taught to read and understand warnings and instructions for paraquat and must take "[m]easures to avoid or minimize adverse health effects").

10.      Because any duties relating to paraquat arise exclusively from federal law—FIFRA and its underlying regulations—alleged violations of federal law form the basis for the underlying claims.  It would be illegal for any state to require that a paraquat label include a warning about the risk of developing Parkinson's disease, because EPA has determined that no causal link exists. *See*  7 U.S.C. § 136v(b) (states are prohibited from imposing "labeling or packaging" requirements

"in addition to or different from" those required under FIFRA); EPA, Paraquat Dichloride: Interim Registration Review Decision, Case No. 0262, at 18 (July 13, 2021), *available at* https://www.regulations.gov/document/EPA-HQ-OPP-2011-0855-0307 ("[T]he weight of evidence [is] insufficient to link paraquat exposure from pesticidal use of U.S. registered products to [Parkinson's disease] in humans.").

11.     Federal courts have routinely grappled with an important question that will be raised here: which state law claims regarding pesticide products are preempted under FIFRA. *See, e.g., Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993) (common-law tort claims based on inadequate labeling of pesticides preempted by FIFRA); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir. 1994) (common-law claims based upon manufacturer's alleged failure to properly label pesticides and to warn of their dangers preempted by FIFRA); *Lescs v. William R. Hughes, Inc.*, 168 F.3d 482 (4th Cir. 1999) (tort claims regarding injuries allegedly caused by pesticide exposure preempted by FIFRA); *King v. E.I. Dupont De Nemours & Co.*, 996 F.2d 1346 (1st Cir. 1993) (FIFRA preempted state law tort claim due to failure to warn); *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1208 (9th Cir. 2002) (state law claims regarding pesticide manufacturer's label instructions preempted by FIFRA); *Nat'l Bank of Com. of El Dorado, Arkansas v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999) (inadequate labeling, failure to warn, and express and implead breach of warranty claims preempted by FIFRA); *Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207 (3d Cir. 2010) (failure to warn claims and claims based on alleged misrepresentation in pesticide marketing brochure not preempted).

12.     In accordance with 28 U.S.C. § 1446(a) and the Local Rules of this Court, a copy of the Complaint is attached as **Exhibit A** ("Compl."). A copy of all other process, pleadings, and orders served on Syngenta and Chevron or otherwise on file with the state court are attached as

**Exhibit B**.  A copy of Defendant U.S. Sugar's consent to the removal of this proceeding to this Court on federal question grounds is attached as **Exhibit C**.

**TIMELINESS OF REMOVAL**

13.     Syngenta and Chevron were each served with the Complaint on August 24, 2021. U.S. Sugar was served with the Complaint on or about August 28, 2021.  Defendants have not responded to the Complaint in state court.

14.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed because it is within 30 days of Defendants being served.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

**PROPRIETY OF VENUE**

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the Circuit Court of the Fifteenth Judicial Circuit, Palm Beach County, Florida, where the state court action was pending prior to removal, is a state court within this federal district and division.

**BASIS OF REMOVAL**

**Diversity Jurisdiction**

16.     Removal is proper pursuant to 28 U.S.C. §§ 1332 and 1441 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

17.     Plaintiffs are both citizens of the state of Florida.  Compl. ¶ 2.

18.     Syngenta is an LLC with its headquarters in Greensboro, North Carolina. Syngenta's sole member is Syngenta Seeds, LLC, which is headquartered in Downers Grove, Illinois.  The sole member of Syngenta Seeds, LLC is Syngenta Corporation, which is incorporated and headquartered in Delaware.

19.     Chevron is headquartered in San Ramon, California and incorporated in the state

of Pennsylvania, and it is thus a resident of those two states. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (citing 28 U.S.C. § 1332(c)(1)).

20.     Therefore, complete diversity exists among the parties but for the joinder of U.S. Sugar as a defendant, and U.S. Sugar's residency should be excluded for the purposes of determining the existence of diversity jurisdiction.

21.     ***First,*** the residency of U.S. Sugar should be disregarded because it has been fraudulently joined in this proceeding in an attempt to destroy diversity. *See, e.g., Legg v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005) ("A common strategy employed by the plaintiffs . . . is to name local parties, . . . thus defeating [defendant's] right to remove a case to federal court."); *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) ("When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand.").

22.     A defendant is fraudulently joined if "there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Legg*, 428 F.3d at 1281. Plaintiffs have fraudulently joined Defendant U.S. Sugar because they cannot state a claim against U.S. Sugar. U.S. Sugar is Mr. Parker's former employer, and is protected by worker's compensation immunity for any non-intentional claim involving a work-related injury. *See* FLA. STAT. ANN. § 440.09(1) (employer is liable to pay worker's compensation to an employee for any "accidental compensable injury or death arising out of work performed in the course and the scope of employment"); *id.* § 440.11 (worker's compensation is "exclusive" form of recovery and stands "in place of all other liability, including vicarious liability ... **to the employee, the legal representative thereof, husband or wife**, parents, dependents, next of kind, and **anyone** otherwise entitled to recover damages from such employer" (emphasis added)). Plaintiffs' claims against Defendant U.S. Sugar

are solely due to Mr. Parker's work-related exposure to paraquat while working for the company. Compl. ¶¶ 11-13 (alleging that he suffered injury "in the course of his employment").

23.     Plaintiffs have not and cannot allege an intentional tort exception to worker's compensation liability.  "[C]ourts have highlighted two factors which show the type of intentional conduct which a reasonable person would consider resulting in the substantial certainty of injury or death: 1) knowledge of prior accidents or defects and 2) intentional conduct to prevent the employee from learning and appreciating the risks involved in the work specifically known by the employer."  *Pendergrass v. R.D. Michaels, Inc.*, 936 So. 2d 684, 691 (Fla. 4th DCA 2006). Plaintiff has not alleged any facts supporting these elements.  Compl. ¶¶ 30-33.

24.     Complete diversity exists when an improper party such as Defendant U.S. Sugar, against whom Plaintiffs have no right of recovery, is fraudulently joined.  *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (joinder of a non-diverse defendant as "a sham or fraudulent device" will not prevent the removal); *Legg*, 428 F.3d at 1322-25 (removal based on diversity jurisdiction appropriate where non-diverse defendant was fraudulently joined); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds"); *Cuevas v. BAC Home Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011) (improper joinder exists if "there is no possibility of recovery by the plaintiff against an in-state defendant"); *In re Briscoe*, 448 F.3d 201, 209–10 (3d Cir. 2006) (time-barred claims against non-diverse defendant constituted fraudulent joinder).  Here, there is no right to recovery against U.S. Sugar under Florida law and Plaintiffs' claims against U.S. Sugar to avoid removal should be disregarded for purposes of determining diversity jurisdiction.[1]

---

[1] If Plaintiffs oppose the removal of this case to this Court, Syngenta and Chevron reserve the right to make an evidentiary submission in support of their assertion of improper joinder.  *See*

25.      **Second,** even if Plaintiffs could recover against U.S. Sugar—which they cannot—U.S. Sugar was fraudulently *misjoined* and should be dropped as a party for that reason.  "The doctrine of fraudulent misjoinder applies 'where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Bollea v. Clem*, 937 F. Supp. 2d 1344, 1350 (M.D. Fla. 2013).

26.      In the Eleventh Circuit, parties are fraudulently misjoined if their joinder does not satisfy the joinder requirements of Rule 20(a)(2).  *Id.*  Under Rule 20, the joinder of multiple defendants in a single action requires that the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and include "a question of law or fact common to all plaintiffs."  Fed. R. Civ. P. 20(a).  "To determine whether claims arise from the same 'series of transactions or occurrences' under Rule 20(a)(2), courts in the Eleventh Circuit apply the 'logical relationship' test."  *Bollea*, 937 F. Supp. 2d at 1350.  Put simply, "there is a logical relationship when the same operative facts serve as the basis of both claims."  *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985).

27.      Here, the claims against Syngenta and Chevron are not based on the same operative facts as the claims against U.S. Sugar.  The claims against U.S. Sugar involve alleged misconduct by Mr. Parker's former employer occurring in the state of Florida between 1967 and 2001—when Mr. Parker was allegedly exposed to a hazardous product based on workplace conditions and other circumstances.  Compl. ¶¶ 11, 31-33.  Plaintiffs have not and could not plausibly claim that Syngenta or Chevron played any role in U.S. Sugar's exposure of its workers to conditions

---

*Wilson*, 257 U.S. at 97-99; *Legg*, 428 F.3d at 1323 (a court may rely on affidavits to determine whether a defendant was fraudulently joined).

"substantially certain to result in injury or death."  Compl. ¶ 32.

28.      Conversely, the claims against Syngenta and Chevron involve allegations about Syngenta's and Chevron's sale of an allegedly defective product without adequate warnings, contrasted with U.S. Sugar's alleged employment practices.  *Compare* Compl. ¶¶ 18-19 *with* Compl. ¶¶ 13, 32.  Plaintiffs cannot plausibly allege that U.S. Sugar played any role in the alleged misconduct by Syngenta and Chevron.

29.      U.S. Sugar has been fraudulently misjoined because it has "no real connection with the controversy" involving Syngenta and Chevron.  *Tapscott v. MS Dealer Service Corp. et al.,* 77 F.3d 1353, 1360 (11th Cir. 1996).  The claims against U.S. Sugar are based upon completely separate facts and legal issues and arise from geographically and temporally remote allegations.  *See, e.g., Luria v. T-Mobile USA, Inc.,* No. 20-cv-24012, 2021 WL 2561793, at *2 (S.D. Fla. June 23, 2021) (plaintiff's fraudulent misjoinder of defendants was "egregious" because claims against separate defendants involved "two distinct time periods and ... completely different agreements.").  For these reasons, U.S. Sugar has been fraudulently misjoined in this proceeding.

30.      ***Third***, and at minimum, Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party." Fed. R. Civ. P. 21.  This Court thus has the "authority to allow a dispensable nondiverse party to be dropped at any time." *Luxor Agentes Autonomos de Investimientos, Ltda. v. Intertransfers, Inc.*, 638 F. App'x 925, 927 (11th Cir. 2016) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *see also Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 815 F. 3d 1293, 1298 n.8 (11th Cir. 2016) (court may drop dispensable non-diverse parties "when necessary to establish federal subject-matter jurisdiction").

31.      A court applying this rule may "dismiss a dispensable party whose presence spoils

diversity jurisdiction." *Buckley v. Control Data Corp.*, 923 F.2d 96, 97 (8th Cir. 1991); *see also Soberay Mach. & Equipment Co. v. MPF Ltd.*, 181 F.3d 759, 763 (6th Cir. 1999) ("[I]t is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity."); *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545–46 (6th Cir. 1994) ("[Rule 21] permits a district court to retain diversity jurisdiction over a case by dropping a nondiverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19."); *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980) (citing cases).

32.    U.S. Sugar is a dispensable party under Fed. R. Civ. P. 19.  Plaintiffs' employment-related claims against Mr. Parker's former employer U.S. Sugar, *see* Compl. ¶¶ 11-13; 30-33, are completely separate from their pesticide-related tort claims against Syngenta and Chevron, which turn on obligations owed under FIFRA.  Plaintiffs will not be prejudiced by U.S. Sugar's severance from this action since each Defendant is, at most, independently liable to Plaintiffs.  Meanwhile, failing to dismiss U.S. Sugar would prejudice Syngenta and Chevron, who are Defendants in consolidated multidistrict litigation concerning paraquat that includes over 250 federal cases in the Southern District of Illinois.  *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill. 2021). Given the substantial factual overlap between this action and those that have already been approved for consolidation, this case will likely be transferred to the federal MDL.  Transfer and coordination in these proceedings would (1) avoid substantial and duplicative discovery burdens and (2) eliminate the risk of inconsistent pretrial rulings on discovery, dispositive motions to dismiss, summary judgment, and other pretrial matters.  Allowing Plaintiffs' claims against Syngenta and Chevron to proceed in federal court will thus best serve the policy of facilitating "complete, consistent, and efficient settlement of controversies."  *Provident Tradesmens Bank &*

*Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968).[2]

33.     If this Court somehow concludes that Plaintiffs can state a claim against U.S. Sugar despite the existence of an exclusive worker's compensation scheme, it should thus be dismissed as a dispensable party pursuant to this Court's authority under Fed. R. Civ. P. 21, with federal jurisdiction thereby preserved.  *See, e.g., Clements v. Essex Ins. Co.*, No. 16-cv-574, 2016 WL 3144151, at *3 (M.D. Fla. June 6, 2016) (dismissing nondiverse defendant pursuant to Rule 21); *Byrd v. Howse Implement Co.*, 227 F.R.D. 692, 694 (M.D. Ala. 2005); *Chabrowski v. Bank of New York Mellon Tr. Co. NA*, No. CV-17-03867-PHX-DWL, 2019 WL 132350, at *4–5 (D. Ariz. Jan. 8, 2019); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, No. 18ML02814ABFFMX, 2018 WL 5905942, at *8 (C.D. Cal. Sept. 10, 2018).

34.     ***Finally,*** the amount in controversy in this proceeding exceeds $75,000 despite Plaintiffs' suggestion that it might not.  A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  The defendant is only required to present evidence supporting that plausible allegation if the allegation is challenged by the plaintiff or the court. *Id.*  However, the court may review any evidence submitted with the notice of removal, as well as make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to determine whether the amount in controversy has been met. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

---

[2] U.S. Sugar is not a "necessary" party under Fed. R. Civ. P. 19 because complete relief is available in its absence, and litigation of the pesticide-related claims in a federal forum will not impair its ability to protect any interest or give rise to a risk of double or inconsistent obligations. *Ahmed v. Kifle*, 728 F. App'x 934, 936 (11th Cir. 2018).

35.     When a plaintiff does not make "a specific demand in the *ad damnum* clause of the complaint, the damages are unspecified, and the preponderance of evidence standard applies."  *See Barnes v. JetBlue Airways Corp.*, No. 07-cv-60441, 2007 WL 1362504, at *1, n.1 (S.D. Fla. May 7, 2007).  Under this standard, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement."  *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

36.     While "minor, short-term injuries" are insufficient to show the amount in controversy, allegations of "serious, lasting" injuries are "typically removable."  *Hickerson v. Enter. Leasing Co. of Ga., LLC*, 818 F. App'x. 880, 883 (11th Cir. 2020).

37.     The amount in controversy is met here because Plaintiffs seek substantial monetary damages for physical pain, mental anguish, loss of consortium, and medical expenses as a result of Mr. Parker's diagnosis with a serious long-term illness—Parkinson's disease.  Compl. ¶¶ 37-45. Indeed, the cost of his medical treatment alone likely satisfies the $75,000 requirement.  *See* Matthew Gavidia, "Study Details Economic Burden of Parkinson's Disease in the United States," *available at* https://www.ajmc.com/view/study-details-economic-burden-of-parkinson-disease-in-the-united-states.  Plaintiffs' assertion that the amount in controversy could fall below this threshold if they prevail, Compl. ¶ 1, should be disregarded because the allegations in the complaint and objective facts show that it is more likely than not that Plaintiffs' claims for monetary damages exceed $75,000.  *See, e.g., Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1356-57 (S.D. Fla. 1998) (denying motion to remand where the amount in controversy clearly exceeded $75,000 despite plaintiff's assertion to the contrary).[3]

---

[3] If Syngenta and Chevron are mistaken on this point, they invite Plaintiffs to stipulate that their alleged damages do not exceed $75,000.

38.     The exception to removal based on diversity of citizenship stated in 28 U.S.C. § 1441(b)(2) does not apply because Defendant U.S. Sugar has been improperly joined in this proceeding for the reasons explained above, and therefore its citizenship should be ignored for purposes of evaluating jurisdiction. *See supra* ¶¶ 16-33.

## Federal Question Jurisdiction

39.     Removal is proper in the alternative pursuant to 28 U.S.C. §§ 1331 and 1441 because Plaintiffs' claims present a substantial federal question.

40.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

41.     "[W]hether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).  The artful-pleading doctrine, however, "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("[T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented.").  "In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *BIW Deceived*, 132 F.3d at 831.

42.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) ("Under the

substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law.").

**A.**   **Plaintiffs' Claims Implicate a Federal Issue That Is Necessarily Raised, Actually Disputed, Substantial, and Capable of Resolution in Federal Court.**

43.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

44.     Where, as here, purported state law claims are premised on violations of duties governed by a federal statute, these requirements are satisfied and a federal court has jurisdiction over those claims. *See Bd. of Comm'rs of Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were premised on failure to satisfy standard of care established in federal statute); *see also Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (concluding a federal question was raised where "Plaintiffs' dependence on federal law permeates the allegations such that the [claims purportedly brought under state law] cannot be adjudicated without reliance on and explication of federal law").

45.     As set forth below, all four requirements for federal jurisdiction over Plaintiffs' claims are satisfied.

46.     Although Plaintiffs ostensibly plead claims against Syngenta and Chevron as violations of state law, they base the underlying theory of liability on alleged violations of federal law or alleged duties arising out of FIFRA.  Compl. ¶¶ 10, 17-19, 26.

47.     Specifically, the Complaint alleges that Syngenta and Chevron violated duties established by federal law by failing to warn about the risks that paraquat allegedly posed to human health, Compl. ¶¶ 17-19, 26-27, and by failing to instruct regarding appropriate protective clothing and equipment to employ while using paraquat-containing products and proper methods for handling paraquat-containing products, *id.* ¶¶ 9-10.

48.     FIFRA and its implementing regulations are the exclusive source of the asserted legal duties regarding the labeling, handling, and use of paraquat.  *See, e.g.*, 7 U.S.C. § 136(q)(1)(F) (FIFRA empowers EPA to control warnings, directions, and packaging, and specifically mandates warnings that are "adequate to protect health and the environment"); *id*. § 136j(a)(2)(G) (it is illegal to use any pesticide "in a manner inconsistent with its labeling").  Indeed, states are *prohibited* from imposing "labeling or packaging" requirements "in addition to or different from" those required under federal law.  *Id*. § 136v(b); *see also Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459–60 (2012) (holding that such language "sweeps widely—and in so doing … prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the" federal law).  Accordingly, Plaintiffs' claims are necessarily governed by the federal requirements under FIFRA and require interpretation and application of that statute, as any additional or different duties would be preempted.

49.     Plaintiffs' theories of liability against Syngenta and Chevron, as pleaded in the Complaint, are thus predicated on allegations that they breached alleged duties owed under FIFRA regarding the distribution and sale of paraquat.  Plaintiffs assert, *inter alia,* that Syngenta and

Chevron should have included additional or different information on the labels for paraquat products even though the information on those labels is directly approved by the EPA and federal law prohibits any state law from imposing different requirements. *See, e.g.,* Compl. ¶ 19.

50.     The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

51.     ***First***, Plaintiffs' claims necessarily require resolution of a federal question—i.e., what obligations and duties did Syngenta and Chevron have under FIFRA to warn about a hypothesized connection between paraquat and Parkinson's. *See Bd. Of Comm'rs,* 850 F.3d at 722-23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty contained in federal law); *Hughes*, 478 F. App'x at 170-71; s*ee also North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1021-23 (2d Cir. 2014) (duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or if the action requires construction of a federal statute, or at least a distinctive policy of a federal statute requires the application of federal legal principles.").

52.     ***Second***, this federal issue is "actually disputed" because the parties disagree as to

the existence and scope of the alleged duties arising under FIFRA.  Specifically, the parties dispute whether Syngenta or Chevron had an obligation to warn about, or protect the public from, the alleged association between paraquat and Parkinson's disease, despite the fact that the EPA—the expert agency with regard to all pesticides—has concluded that no such connection exists.  *See* EPA, Paraquat Dichloride:  Interim Registration Review Decision, Case No. 0262, at 18 (July 13, 2021), *available at* https://www.regulations.gov/document/EPA-HQ-OPP-2011-0855-0307.

53.     ***Third***, the federal issue presented by Plaintiffs' claim is "substantial."  *Gunn*, 568 U.S. at 258.  "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole."  *Id.* at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'"  *Id.* at 260-61 (quoting *Grable*, 545 U.S. at 315; *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)).  "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Grable*, 545 U.S. at 312.

54.     Congress recognized the importance of a nationwide approach to the EPA's regulation of pesticides when it enacted FIFRA.  *See Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1205–06 (9th Cir. 2002) ("Congress has afforded the EPA substantial enforcement powers under FIFRA").  FIFRA recognizes the uniquely federal interest in regulating pesticides across the nation and expressly excludes the authority of states to do so.  *See* 7 U.S.C. § 136v(b) (states are prohibited from imposing "labeling or packaging" requirements "in addition to or different from" those required under FIFRA); *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005)

(creating a two-part test for analyzing preemption under FIFRA).

55.     This lawsuit raises a substantial federal question even though FIFRA does not provide for a private right of action.  In *Grable*, the Supreme Court held that the absence of a federal cause of action does not necessarily foreclose federal-question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1018–19, 1024 (determining that the federal issue was substantial even though the underlying federal statute did not include a private right of action where it was "significant to the development of a uniform body of federal securities regulation"); *Ranck v. Mt. Hood Cable Reg. Comm'n*, No. 16-cv-02409, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* despite the absence of a private right of action).

56.     Removal is especially appropriate here because Plaintiffs' action is one of hundreds of similar actions nationwide, over 250 of which are pending in the Paraquat MDL in the Southern District of Illinois.  *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill. 2021).

57.     ***Fourth***, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258. Indeed, federal courts are afforded exclusive jurisdiction to hear challenges to the EPA's authority to enforce FIFRA.  *See* 7 U.S.C. § 136n.  Litigating this case in a state court runs the risk of the state court applying federal requirements in a manner either in tension or in conflict with the way the federal agency tasked with enforcing FIFRA—the EPA—applies them.  Federal jurisdiction is therefore properly exercised to resolve "disputed issues of federal law" under FIFRA.

58.     In sum, removal of this action is appropriate because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *Bd. of Comm'rs*, 850 F.3d at 722-23; *Hughes*, 478 F. App'x at 170-71; *NASDAQ OMX Grp.*, 770 F.3d at 1031; *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question.  Thus, plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal law.").

### B.     The Court Can Exercise Supplemental Jurisdiction.

59.     If the Court determines that some, but not all, of Plaintiffs' claims implicate a substantial federal question, the Court can evaluate whether to retain the non-federal claims under the doctrine of supplemental jurisdiction which grants jurisdiction over state claims forming part of the same case or controversy.  *See* 28 U.S.C. § 1367(a).

60.     It is not necessary to establish that *all* of Plaintiffs' causes of action raise a federal question to establish federal jurisdiction.  Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, "[n]othing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).  Instead, "federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact." *Id.* at 164-65.

61.     Because the Court has original jurisdiction over at least some counts against Syngenta and Chevron, it has supplemental jurisdiction over Plaintiffs' remaining counts against

the Defendants, which are so related that they "form part of the same case or controversy."

62.     The presence of state law claims, if any, therefore does not defeat this Court's original jurisdiction over the federal claims.

## **OTHER REMOVAL ITEMS**

63.     Under 28 U.S.C. § 1446(b)(2)(A), all Defendants have been served in this action and consent to removal, as indicated by counsel's signatures below and Exhibit D attached hereto.

64.     By filing this Notice of Removal, Syngenta and Chevron expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.  If any question arises as to the propriety of removal to this Court, Syngenta and Chevron request the opportunity to submit a brief in support of its position that this case has been properly removed and to present oral argument.

65.     Pursuant to 28 U.S.C. § 1446(d), Syngenta and Chevron are contemporaneously filing a Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiffs.

**WHEREFORE**, Syngenta and Chevron remove this action, now pending in the Circuit Court of the Fifteenth Judicial Circuit Palm Beach County, Florida, case number 50-2021-CA-009421-xxxx-MB, to this Court.

DATED: September 22, 2021

Respectfully submitted,

/s/ Jennifer Cecil
Jennifer Cecil (FBN 99718)
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
Jennifer.Cecil@huschblackwell.com

*Attorney for Chevron U.S.A. Inc.*

/s/ Joshua C. Webb
Dennis P. Waggoner (FBN 509426)
dennis.waggoner@hwhlaw.com
Joshua C. Webb (FBN 051679)
josh.webb@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Telephone: 813-221-3900
Facsimile: 813-221-2900

*Attorneys for Syngenta Crop Protection LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 22, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court, and that a copy of the foregoing is being furnished by U.S. Mail and e-mail to counsel for Plaintiffs C. Calvin Warriner, III, at the following addresses:

<u>E-Mail</u>
ccw@searcylaw.com
clb@searcylaw.com

<u>Mail</u>
Searcy Denney Scarola Barhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409

*s/Joshua C. Webb*
*Attorney*

15919425v2